UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN BUSHANSKY,

Plaintiff,

v.

HV BANCORP, INC., JOHN D. BEHM, JOSEPH F. KELLY, SCOTT W. FROGGATT, TRAVIS J. THOMPSON, CARL HJ. APLUNDH, III, MICHAEL L. HAMMER, and ROBERT J. MARINO,

Defendants.

Case No. ____________

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against HV Bancorp, Inc. ("HV" or the "Company") and the members of HV's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which HV will be acquired by Citizens Financial Services, Inc. ("CZFS") (the "Proposed Transaction").

2. On October 19, 2022, HV and CZFS issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated October 18, 2022, to sell HV to CZFS (the "Merger Agreement"). Under the terms of the Merger Agreement, HV shareholders will have the right to receive, at their election, either: (i) $30.50 in cash, or (ii) 0.400 shares of CZFS common stock for each share of HV common stock (the "Merger Consideration"). Each HV stockholder's election is subject to proration provisions that may modify the stockholder's election to ensure that 20% of the outstanding shares of HV common stock (excluding shares of HV common stock to be canceled in connection with the merger) are exchanged for cash and 80% of the outstanding shares of HV common stock are exchanged for shares of CZFS common stock.

3. On December 16, 2022, CZFS filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that HV stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by The Kafafian Group, Inc. ("TKG"); and (ii) the estimated financial impacts of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as HV stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed.

4. In short, unless remedied, HV's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, HV's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of HV.

9. Defendant HV is a Pennsylvania corporation, with its principal executive offices located at 2005 South Easton Road, Suite 304, Doylestown, Pennsylvania 18901. HV operates as the bank holding company for Huntingdon Valley Bank (or the "Bank"). The Company's shares trade on the Nasdaq Capital Market under the ticker symbol "HVBC."

10. Defendant John D. Behm ("Behm") has been a director of the Company and of the Bank since 2016.

11. Defendant Joseph F. Kelly ("Kelly") has been a director of the Company and of the Bank since 2012.

12. Defendant Scott W. Froggatt ("Froggatt") has been a director of the Company and of the Bank since 1999.

13. Defendant Travis J. Thompson ("Thompson") has been Chief Executive Officer ("CEO") of the Bank since January 2013, Chairman of the Board since July 2016, and a director of the Company and of the Bank since 2007. Defendant Thompson also served as President of the Bank from January 2013 to November 30, 2021.

14. Defendant Carl Hj. Asplundh, III ("Asplundh") has been a director of the Company and of the Bank since 2018.

15. Defendant Michael L. Hammer ("Hammer") has been a director of the Company and of the Bank since 2020.

16. Defendant Robert J. Marino ("Marino") has been Vice Chair of the Board since January 2021, President of the Bank since December 1, 2021, and a director of the Company and of the Bank since 2018.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. CZFS is a Pennsylvania corporation, incorporated on April 30, 1984, to be the holding company for its wholly owned subsidiary, First Citizens Community Bank ("FCCB"), a Pennsylvania-chartered bank. FCCB is a full-service bank engaged in a broad range of banking activities and services for individual, business, governmental and institutional customers. On September 30, 2022, CZFS had total assets of approximately $2.35 billion, total deposits of

approximately $1.87 billion, net loans of approximately $1.72 billion, and stockholders' equity of approximately $191.4 million.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. The Bank was organized in 1871, and currently provides residential and commercial loans to its general service area (Montgomery, Bucks and Philadelphia Counties, Pennsylvania, Burlington County, New Jersey and New Castle County, Delaware) as well as offering a wide variety of savings, checking and certificate of deposit accounts to its retail and business customers. The Bank's principal business consists of attracting retail deposits from the general public in its market area and investing those deposits, together with funds generated from operations and borrowings, primarily in one- to four-family residential mortgage loans, commercial real estate loans (including multi-family loans) and other commercial business, construction loans and, to a lesser extent, home equity loans and home equity lines of credit and consumer loans.

20. On September 30, 2022, HV had approximately $603.3 million in consolidated assets, approximately $504.1 million in deposits and approximately $41.4 million of shareholders' equity.

21. On November 4, 2022, the Company announced its third quarter 2022 financial results and business developments. Net income for the quarter ended September 30, 2022, was $705,000 or ($0.35 per basic share and $0.34 per diluted share) versus net income of $640,000 or ($0.33 per basic share and $0.31 per diluted share) for the quarter ended June 30, 2022. For the quarter and nine months ended September 30, 2022, net interest income increased 34.4% and 24.1% to $5.4 million and $13.4 million over the same periods of the prior year. Reflecting on the

Company's results, defendant Thompson commented:

> We are pleased with HVB's strong performance in commercial loan originations which totaled $60 million for the quarter and $165 million year to date. Total commercial loans outstanding increased $127 million year over year (net of loans originated through the Paycheck Protection Program). This strategy has proven to be a primary driver in our yield and margin performance, offsetting the volatility of the Residential Mortgage market caused by significantly higher interest rates and limited housing inventory which has constrained home sales in our market and across the nation. HVB remains well positioned to navigate these challenges and is committed to the markets we serve.

**The Proposed Transaction**

22.  On October 19, 2022, HV and CZFS issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> Mansfield, PA and Doylestown, PA – October 19, 2022 – Citizens Financial Services, Inc. (NASDAQ: CZFS) (the "Company" or "CZFS"), the holding company for First Citizens Community Bank ("FCCB"), and HV Bancorp, Inc. (NASDAQ: HVBC) ("HVBC"), the holding company for Huntingdon Valley Bank ("HVB"), are pleased to jointly announce entry into a definitive agreement (the "Agreement") pursuant to which HVBC will merge with and into CZFS. Under the terms of the Agreement, the shareholders of HVBC will have the right to elect to receive for each share of HVBC common stock either $30.50 in cash or 0.400 shares of CZFS common stock, or approximately $67.4 million in the aggregate. Elections will be subject to proration procedures whereby 80% of the shares of HVBC common stock will be exchanged for CZFS common stock and 20% of the shares of HVBC common stock will be exchanged for cash.
>
> This strategically compelling merger is expected to enhance and expand CZFS's presence in communities located in Montgomery, Bucks and Philadelphia Counties in Pennsylvania, New Castle County in Delaware, and Burlington County in New Jersey. Travis J. Thompson, currently the Chief Executive Officer of HVBC, and Robert J. Marino, currently the President of HVBC, will be employed as senior officers of FCCB.
>
> As of June 30, 2022, HVBC had approximately $570.6 million of total assets, $388.3 million of net loans and $481.5 million of deposits. Based on financial metrics as of June 30, 2022, the combined company is expected to have over $2.78 billion in assets, $1.96 billion in gross loans and $2.36 billion in deposits upon completion of the transaction.
>
> Randall Black, President and Chief Executive Officer of CZFS, commented, "We are pleased to announce the strategic combination of FCCB (First Citizens

> Community Bank) and Huntingdon Valley Bank. Our complementary business models and shared values make this partnership a natural fit" said Mr. Black. "This agreement creates great excitement, and we believe our combination will deepen our reach in providing banking services and enhanced technological offerings across our entire bank franchise. In addition, the expertise of the combined organization will enable us to invest in the future, build market share, and better serve all of our constituencies. From a broader perspective, together with the Huntingdon Valley team, we will leverage our combined strength to focus on a greater future."
>
> "We could not be happier about becoming part of FCCB and look forward to the many benefits this strategic partnership will provide for our customers, employees, and shareholders. As 150-year-old financial institutions, we share similar core values and both believe deeply in community banking. We are confident that our customers will receive the same high-quality experience from FCCB that they have come to expect from HVB" said Travis Thompson, Chairman and Chief Executive Officer of HVBC.
>
> The transaction has been approved by the Boards of Directors of both companies and is expected to be completed during the first half of 2023, subject to regulatory approval, approval by HVBC shareholders, and other customary closing conditions. Upon closing, one HVBC director will join each of the Board of Directors of CZFS and FCCB, and one HVBC director will join the Board of Directors of FCCB.
>
> Janney Montgomery Scott LLC acted as financial advisor to CZFS and Hogan Lovells US LLP served as its legal counsel. The Kafafian Group, Inc. acted as financial advisor and provided a fairness opinion to HVBC and Luse Gorman, PC served as its legal counsel.

**<u>Insiders' Interests in the Proposed Transaction</u>**

23. HV insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of HV.

24. Notably, certain Company insiders have secured positions for themselves with the combined company. For example, under the terms of the Merger Agreement, one HV designee will serve on the Board of the surviving corporation as well as on the Board of FCCB, and one other HV designee will serve on the Board of FCCB.

25. Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with CZFS. Under the terms of the Merger Agreement, upon consummation of the Proposed Transaction, all vested and unvested Company options and Company restricted stock awards will be converted into the right to receive cash payments. The following tables set forth the cash payments Company insiders will receive in connection with their Company options and restricted stock awards:

| Name | HVBC Stock Options (#) | Exercise Price ($) | Aggregate Stock Option Value ($) |
|---|---|---|---|
| Carl Hj. Asplundh III | 10,000 | 15.92 | 145,800 |
| Joseph F. Kelly | 10,000 | 14.80 | 157,000 |
| John D. Behm | 10,000 | 14.80 | 157,000 |
| Scott W. Froggatt | 10,000 | 14.80 | 157,000 |
| Michael L. Hammer | — | — | — |
| Robert J. Marino | 10,000 | 15.92 | 145,800 |
| Travis J. Thompson | 50,000 | 14.80 | 785,000 |
| Joseph O'Neill, Jr. | 25,000 | 14.80 | 392,500 |
| Barton Skurbe | — | — | — |
| J. Chris Jacobsen | 25,000 | 14.80 | 392,500 |
| Charles Hutt | 25,000 | 14.80 | 392,500 |
| Hugh W. Connelly | 5,000 | 15.21 | 76,450 |
| Derek P. B. Warden | 10,000 | 20.11 | 103,900 |

| Name | Unvested HVBC Restricted Stock Awards (#) | Aggregate Restricted Stock Award Value ($) |
|---|---|---|
| Carl Hj. Asplundh, III | 2,800 | 71,596 |
| Joseph F. Kelly | 2,100 | 53,697 |
| John D. Behm | 2,100 | 53,697 |
| Scott W. Froggatt | 2,100 | 53,697 |
| Michael L. Hammer | — | — |
| Robert J. Marino | 27,800 | 710,846 |
| Travis J. Thompson | 28,400 | 726,188 |
| Joseph O'Neill, Jr. | 4,200 | 107,394 |
| Barton Skurbe | — | — |
| J. Chris Jacobsen | 4,200 | 107,394 |
| Charles Hutt | 4,200 | 107,394 |
| Hugh W. Connelly | 25,000 | 639,250 |
| Derek P. B. Warden | 5,000 | 127,850 |

26. Further, in connection with the execution of the merger agreement, HV, the Bank, and CZFS entered into individual settlement and non-competition and non-solicitation agreements with each of defendants Thompson and Marino, pursuant to which they will receive a lump sum cash payment in the amount of $1,500,000 and $300,000, respectively. Defendant Thompson's

agreement also provides for a $400,000 transaction bonus, payable on or immediately prior to the closing date of the merger.

27. Additionally, if they are terminated in connection with the Proposed Transaction, HV's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Other ($)(3) | Total ($) |
|---|---|---|---|---|
| Travis Thompson | 1,900,000 | 1,055,888 | 48,726 | 3,004,614 |
| Robert Marino | 300,000 | 792,494 | — | 1,092,494 |
| Joseph O'Neill, Jr. | 100,000 | 272,244 | 39,465 | 411,709 |
| Barton Skurbe | 28,462 | — | 13,196 | 41,657 |

**The Registration Statement Contains Material Misstatements and Omissions**

28. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to HV's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

29. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor TKG; and (ii) the estimated financial impacts of the Proposed Transaction.

***Material Omissions Concerning TKG's Financial Analyses***

30. The Registration Statement omits material information regarding TKG's financial analyses.

31. The Registration Statement describes TKG's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of TKG's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses.

Without this information, as described below, HV's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TKG's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to HV's stockholders.

32. With respect to TKG's *Going-Concern Range of Value Analysis of SVB Securities*, the Registration Statement fails to disclose and quantify the inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%.

33. With respect to TKG's *Peer Group Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed in the analysis.

34. With respect to TKG's *Comparable Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed in the analysis.

35. The omission of this information renders the statements in the "Opinion of HVBC's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Estimated Financial Impacts of the Proposed Transaction***

36. The Registration Statement omits material information concerning the estimated financial impacts of the Proposed Transaction.

37. For example, the Registration Statement sets forth that in reaching its decision to approve the Merger Agreement, the Board considered "the anticipated pro forma financial impact of the merger on the combined company, including earnings, earnings per share accretion,

dividends, return on equity, tangible book value, asset quality, operational efficiency, liquidity and regulatory capital levels[.]" Registration Statement at 41. The Registration Statement fails, however, to quantify the specific anticipated pro forma financial impact of the merger on the combined company, including earnings, earnings per share accretion, dividends, return on equity, tangible book value, asset quality, operational efficiency, liquidity and regulatory capital levels.

38. The omission of this information renders the statements in the "HVBC's Reasons for the Merger; Recommendation of the HVBC Board of Directors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of HV will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about the inputs and assumptions underlying TKG's financial analyses, and the estimated financial impacts of the Proposed Transaction. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of HV within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HV, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act. As a direct and proximate result of defendants' conduct, HV stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of HV, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to HV stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: December 29, 2022

**WEISS LAW**

By: *s/ Michael A. Rogovin*
Michael A. Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 682-3025
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*